**Raymond CANTU, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–86–436–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 30, 1987.

Norman Burns, Gonzales, for appellant.

W.C. Kirkendall, Dist. Atty., Sequin, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellant Raymond Cantu, Jr., appeals his conviction for voluntary manslaughter. He asserts three points of error on appeal. We affirm.

■ Appellant's first point of error is that the trial court excluded testimony of the violent character of the deceased. Appellant relies on *Dempsey v. State*, 266 S.W.2d 875 (Tex.Crim.App.1954), which held that evidence of the violent character of the deceased is admissible to show that the accused acted in self-defense. Evidence of prior specific acts of violent misconduct by the deceased are admissible where there is evidence that the deceased committed some act of aggression toward the appellant which would give rise to appellant's claim of self-defense. *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Crim.App.1983); *Lowe v. State*, 612 S.W.2d 579, 580 (Tex.Crim.App.1981); *Dempsey*, 266 S.W.2d at 877–78. Appellant's cousin testified that she saw the deceased provoke the fight by attacking appellant with a knife. Appellant then unsuccessfully re-offered the testimony of appellant's girlfriend, which had been excluded earlier, during the State's case in chief.

Before appellant's girlfriend, Sylvia Flores, testified during the State's case in chief, she was questioned outside the presence of the jury. Ms. Flores testified during this examination that she knew the deceased because, four years earlier, he had broken into her house and tried to rape her. She testified that she woke up and found him already on top of the bed; however, he ran out of the house when she woke up. She also testified that she pressed charges against the deceased, but she did not know whether he was convicted. She only knew that she came to court to testify against the deceased, but he didn't show up.

Generally those cases in which the defendant attempted to invoke the *"Dempsey* rule" concern the predicate required rather than the character of the evidence relied upon to show the deceased's violent character. In the present case, the necessary predicate was established and the sole issue is whether Sylvia Flores' testimony shows that the deceased committed a specific act of violence.

■ Since rape is a crime of violence *per se, Wisdom v. State*, 708 S.W.2d 840, 845 (Tex.Crim.App.1986), it logically follows that evidence of an attempted rape would be admissible as a specific act of violence. Reviewing the evidence excluded by the trial court, we conclude that the facts testified to by Flores do not show an attempted rape. Flores' testimony that the deceased tried to rape her was a mere conclusion unsupported by the remainder of her testimony.

As the Court of Criminal Appeals stated in *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App.1986), statements cannot be "plucked out of the record and examined in a vacuum." The same logic was recently applied in *Joiner v. State*, 727 S.W.2d 534, 537 (Tex.Crim.App.1987), in which the Court held that the bare statement, "It was an accident," was insufficient to raise the issue of voluntary conduct. Instead of considering the admissibility of the incident on the basis of Flores' testimony that the deceased tried to rape her, we review the admissibility of this incident looking at all of the facts testified to by Flores. The evidence merely shows that the deceased entered her house, was on top of her bed, and ran from the house when she awoke.

She did not testify that he said anything or did anything other than run away. Similar evidence has been held insufficient to show an intent to commit rape. *Compare Hays v. State*, 217 S.W.2d 938 (Tex.Crim.App. 1920) (evidence of holding wrist, being next to bed, and fleeing immediately, held insufficient) *with Williams v. State*, 699 S.W.2d 368 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (evidence of being in house nude and fleeing, held sufficient). We hold that the facts, as developed by appellant in this case, do not show a specific act of violence committed by the deceased. Appellant's first point of error is overruled.

In addition, the record shows that when Sylvia Flores was asked if she ever told Ramon Cantu about the attempted rape, she answered:

A. No sir.

Q. Did he ever mention it to you?

A. No sir.

Q. As far as you know, did Ramon Cantu know anything about that?

A. No sir.

Appellant next contends that the trial court erred in allowing the State, in violation of appellant's motion for discovery, to call two witnesses on rebuttal. This argument is without merit. Sylvia Flores had testified, on direct examination, that she and appellant went to Luling after the killing and spent the night in the home of appellant's sister. They were driven there by two men, accompanied by another woman. On cross-examination, appellant attempted to discredit Flores' testimony by challenging her to produce the two men who allegedly drove them to Luling. Appellant then further impeached Flores by calling his sister to testify that appellant did not spend the night with her in Luling, as Flores contended. On rebuttal the next day, the State called the two men as rebuttal witnesses, and appellant objected on the grounds that the State had not disclosed them as prospective witnesses prior to trial. Appellant initiated the controversy over whether the State's witness could produce corroboration of her testimony. He is in no position to complain on appeal that he was surprised by the State's rebuttal evidence. *See Nichols v. State*, 504 S.W.2d 462, 464 (Tex.Crim.App.1974); *see also Quevedo v. State*, 661 S.W.2d 321, 322 (Tex.App.—Corpus Christi 1983, pet. ref'd). Error, if any, was invited by appellant. Furthermore, it is clear that the State had no reason to anticipate that the rebuttal witnesses would be needed until appellant challenged the State to produce them. There was no reason for the State to have named these men as witnesses prior to trial.

Finally, appellant contends that the trial court improperly limited his cross-examination of the investigating police officer regarding the attitudes of witnesses and the circumstances surrounding the killing. The trial court sustained the prosecutor's objections to such questions, stating that the questions were not relevant until the witnesses themselves testified.

A party may prove declarations of a witness which tend to show bias, interest, prejudice, motive, or any other mental state affecting credibility. *Duncantell v. State*, 563 S.W.2d 252, 257 (Tex.Crim.App.1978). The accused should be allowed great latitude in showing any fact that would tend to establish such a mental state in a witness testifying against him; however, trial courts have considerable discretion over how and when bias may be proved. *Spriggs v. State*, 652 S.W.2d 405, 407–08 (Tex.Crim.App.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983). Here, both witnesses about whom appellant attempted to question the investigating officer testified at trial. Appellant had the opportunity at that time to ask those witnesses about their bias or prejudice. In addition, the investigating officer was recalled to the stand by the State after both witnesses had testified. Appellant was allowed to question the officer about the reluctance of one of the witnesses to talk to the police. He did not attempt to ask the officer about the attitude of the other witness. No reversible error occurred.

We have carefully considered appellant's three points of error, and they are over-

ruled. The judgment of the trial court is AFFIRMED.